IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**COMMUNITY BANK, DESOTO COUNTY,**                              **PLAINTIFF,**

**V.**                                               **CIVIL ACTION NO. 2:02CV251-P-A**

**MARTIN E. COOPER, JR.; COOPER**
**GLASS COMPANY, LLC; and C AND**                    **DEFENDANTS**
**R HOLDING COMPANY, LLC,**                         **THIRD-PARTY PLAINTIFFS**,

**V.**

**MARK BARTLETT,**                                        **THIRD-PARTY DEFENDANT.**

<u>**MEMORANDUM OPINION**</u>

This matter comes before the court upon Plaintiff's Motion for Summary Judgment [67-1]. Upon due consideration of the motion and the responses filed thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

The basic facts that follow are undisputed. Martin Cooper, Jr. and Mark Bartlett formed a Mississippi limited liability company named The Car Lot, LLC for the purpose of selling used cars. Cooper was a 40% stakeholder and Bartlett was a 60% stakeholder.

On May 31, 2002, Cooper and Bartlett, on behalf of The Car Lot, LLC, closed a $235,000 line-of-credit loan with Community Bank. Approximately $153,000 of the $235,000 was initially advanced on the day of closing to The Car Lot, LLC. On that day, the parties executed two LLC resolutions, a promissory note, a mortgage, two Continuing Guaranties, and a Third Party Pledge

Agreement.

**A. The May 31, 2002 Closing Documents**

1. The Two LLC Resolutions

At closing, The Car Lot, LLC executed two resolutions. The first one resolved in pertinent part, "that the LLC grants ... to Community Bank ... a second lien on the LLC's real property located at 2466 Highway 77, Marion, Arkansas, to secure said lender's loan to The Car Lot, LLC, a Mississippi limited liability company, in the sum of $235,000." The second resolution states in pertinent part:

> RESOLVED, that COMMUNITY BANK DESOTO COUNTY, hereinafter sometimes called the Bank be and is hereby designated as a depository for the funds of this LLC and *any manager or member of this LLC are hereby authorized* to open or cause to be opened an account or accounts with said Bank on such terms, conditions and agreements as shall be required by said Bank, *to endorse or cause to be endorsed, in the name of the LLC and to cash, to negotiate, or to deposit or cause to be deposited in such account or accounts any money, checks, drafts, orders, notes and other instruments for the payment of money and to make any other agreements deemed advisable in regard thereto*.
>
> RESOLVED FURTHER, that *checks, drafts or other withdrawal orders issued against the funds of this LLC on deposit with said Bank may be signed by any      ONE     of the following:*
>
> *Mark A. Bartlett*
>
> *Martin E. Cooper, Jr.*
>
> And said Bank is hereby full [sic] authorized to pay and charge to the account of this LLC checks, drafts or other withdrawal orders, so signed, including those payable to the individual order of the person signing the same and including also checks or other withdrawal orders payable to the said Bank or to any other person of LLC, which are applied in payment of any indebtedness owing to said Bank from the person or persons who signed such checks or other withdrawal orders.
>
> ***

> ***RESOLVED FURTHER, that this resolution shall continue in force until express written notice of its rescission or modification has been furnished to and received by said Bank.***

(emphasis added).

2. The Promissory Note

Also at closing, Cooper executed the Promissory Note which included the following terms:

> I/WE AGREE THIS LOAN IS SEPARATELY SECURED BY SECOND DEED OF TRUST DATED 5/31/02 IN THE NAME OF C & R Holding, LLC,BY AND BY PERSONAL GUARANTIES FROM MARTIN E. COOPER, JR., COOPER GLASS COMPANY, LLC AND MARK A. BARTLETT.
>
> OBLIGATIONS INDEPENDENT - I understand that I must pay this note even if someone else also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of use together, to collect this note. ***

3. The Continuing Guaranties

Cooper also executed two documents entitled "Continuing Guaranty" – the first was executed in Cooper's personal capacity and the second in his capacity as president of Cooper Glass (Cooper's company in Marion, Arkansas). The Continuing Guaranties provide in pertinent part that:

> I do furthermore bind and obligate myself, my heirs and assigns, jointly and severally with said debtor [The Car Lot, LLC], for payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing and binding myself, my heirs and assigns, by all terms and conditions contained in any note or notes signed or to be signed by said debtor, making myself a party thereto; hereby waiving all notice including notice of any such indebtedness and of demand, presentment, protest or notice of demand for non-payment and of notice of any act to establish the liability of any party or any commercial or other party's indebtedness or obligation covered by this guaranty; I do further waive all notice and please of discussion and division and I agree upon demand at any time, to pay to said Bank, its transferees or assigns, the amount of said indebtedness up to the amount of this guaranty, together with interest, fees

3

and charges above set forth, becoming subrogated in the event of payment in full by me to the claim of said Bank, transferees or assigns, together with whatever security it or they may hold against said indebtedness.

4. The Mortgage

Cooper and his father (the owners of C and R Holdings Company, an Arkansas LLC) executed a mortgage in favor of Community Bank "to secure the indebtedness of The Car Lot, LLC, to lender in the principal sum of ... ($235.000.00)."

5. The Third Party Pledge

Finally, Cooper and his father on behalf of C and R Holding Company executed a Third Party Pledge Agreement granting Community Bank a security interest in the same property described in the mortgage.

**B. The Alleged Oral Modification**

Cooper alleges that the terms of all of the aforementioned loan documents were modified by an alleged oral agreement between Cooper and the loan officer, Mr. Sanford. Although it is unclear when exactly this conversation took place, it seems clear enough that it is alleged to have taken place in the parking lot immediately after leaving the attorney's office in which the closing took place. Essentially, Cooper alleges that he asked Sanford not to allow his LLC partner to draw any further funds from the $235,000 line of credit the LLC had just closed (other than the $153,000 that initially advanced that same day) until Cooper could have a chance to inspect the books at The Car Lot, LLC. Cooper alleges that Sanford agreed to this, Sanford denies agreeing to the modification.

**C. The New Mortgage**

On July 31, 2002, two months after the original closing, Cooper and his father returned to

4

their attorney's office and executed a new mortgage in favor of The Car Lot, LLC securing the same $235,000 line of credit. It is undisputed that the new mortgage rebound C and R Holding to the precise terms of the earlier mortgage except for a change in the maturity date and an attachment of a property description. It is undisputed that there was no mention of any oral modifications to the original loan terms in relation to the new mortgage.

**D. The Bankruptcy**

On September 17, 2002, less than four months after the May 31, 2002 closing, The Car Lot, LLC declared bankruptcy as did Mark Bartlett personally. Bartlett has also since pled guilty to a felony in connection with operations at The Car Lot, LLC. By the time of bankruptcy, the entirety of the $235,000 line of credit had been extended. Other than a $40,000 payment Cooper made on the $235,000, which Bartlett thereafter drew back out, Cooper has made no payments on the outstanding $235,000 loan.

**E. The Mercedes**

On May 8, 2002, Community Bank loaned Cooper $31,770.00 to purchase a 2001 Mercedes C320. Cooper purchased the vehicles through The Car Lot, LLC. Two or three weeks after the purchase, Cooper delivered the car back to Bartlett to sell. On September 6, 2002, Cooper made a partial payment, leaving a principal balance of $6739.25. The entire loan was to be repaid on November 4, 2002. However, Cooper has made no further payments.

**F. The Lawsuit**

Community Bank filed suit against Cooper, Cooper Glass Company LLC, and C and R Holdings Company, LLC seeking a judgment requiring the defendants to pay back the $235,000 line-of-credit loan extended to The Car Lot, LLC and the $6739.25 remaining on the loan Cooper

obtained to purchase the Mercedes. The defendants essentially argue that they should not have to pay back the $235,000 loan because the five loan documents described above were orally modified by Cooper's alleged post-closing oral agreement with Sanford the loan officer not to allow Bartlett – the 60% stakeholder in The Car Lott, LLC – to draw from the line of credit without Cooper's permission in contravention of the loan documents.

Furthermore, the defendants posit the enigmatic defense that he should not have to pay back the remaining $6739.25 he owes on the loan for the Mercedes because of "the bank's repeated misrepresentations as to the whereabouts of the title, which caused the loss of the vehicle and frustrated the purpose of the loan. As Sanford's misrepresentation deprived Cooper of the property that he purchased with the loan, the bank is estopped from recovering the loan."

In their Answer to the First Amended Complaint, the defendants assert a counter-claim against the bank alleging that Sanford (and thereby Community Bank) breached the alleged oral agreement between Sanford and Cooper by allowing Bartlett to draw on the line of credit. Therefore, the defendant argues, he should not have to pay back the money he owes to Community Bank either in whole or in part.

The defendants also filed a Third Party Complaint against Mark Bartlett in which Cooper seeks contribution from Bartlett for all or part of what the bank may recover from Cooper and his companies.[1] Other than an Answer, no other activity is apparent on the record with regard to the counterclaim, nor has anyone mentioned the effect of Bartlett's personal bankruptcy would have on the bank's or Cooper's ability to recover any of the $235,000.

---

[1] At present, Mark Bartlett is acting *pro se*.

## II. DISCUSSION

**A. Summary Judgment Standards**

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v.*

7

*Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5 Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

**B. Analysis**

The court begins by noting the remarkable absence of citations to legal precedent for the defendants' primary position – *i.e.,* that despite the fact it is undisputed that he bound himself and his companies to the terms of $235,000 line-of-credit loan with Community Bank, his alleged oral agreement with the loan officer frees Cooper from his liability to repay the loan since Sanford allowed Bartlett to draw money pursuant to the loan documents. Even reading the facts in a light most favorable to Cooper – *i.e.*, assuming that the conversation took place between Cooper and Sanford just after the closing on May 31, 2002 and even that Sanford did in fact agree not to disburse any further money to Bartlett without Cooper's permission – there is no material fact warranting a trial in this matter.

It is undisputed that The Car Lot, LLC executed two LLC resolutions on the day of closing. These LLC resolutions were executed through the LLC's only two members: Cooper and Bartlett. As quoted above, one of the LLC resolutions stated that both Cooper and Bartlett would have the right to draw from the line of credit. Furthermore, the same resolution stated that "this resolution shall continue in force until express written notice of its rescission or modification has

8

been furnished to and received by said Bank." It is undisputed that there was no written notice of modification. It is also undisputed that Bartlett, the majority member of the LLC who also executed the resolution, was unaware of the alleged oral agreement between Cooper and Sanford. It should go without saying that one member, especially a minority member, of an LLC cannot unilaterally alter an agreement between the LLC and a third-party without the consent of the other majority member. Thus, the alleged oral agreement between Cooper and Sanford does not act to modify the LLC resolution stating that either Bartlett or Cooper had the right to draw the money.

Furthermore, the alleged oral modification had no effect on the rest of the documents indisputably signed by Cooper personally and on behalf of Cooper Glass Company LLC and C and R Holdings LLC. That is, even if there were an oral modification of the resolution, such an agreement has no effect on the promissory note, the two guaranties, the third party pledge, or the mortgage (both the first mortgage and the new, amended mortgage).

The defendants argue, *inter alia*, that the bank via its loan officer Sanford, had a fiduciary duty to Cooper. Cooper seems to argue that Sanford had the duty to help him run his business and to protect him against Cooper's own business partner, Bartlett – a man with whom Cooper voluntarily joined as a business partner in forming The Car Lot, LLC. "A fiduciary relationship may be formed in a legal context where there emerges 'on the one side an overmastering influence or, in the other, weakness, dependence, or trust, justifiable reposed." *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398, 403 (Miss. 1997). "[T]he Mississippi Supreme Court has repeatedly held that lenders and their borrowers typically are not in a fiduciary relationship, and certainly are not as a matter of law." *Strong v. First Family Financial*

*Services*, 202 F.Supp.2d 536, 541 (S.D.Miss. 2002). "The person asserting that a fiduciary relationship existed has the burden of proving the existence of such a relationship by clear and convincing evidence." *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 150 (Miss. 1998). The court concludes that the defendants have not met their heavy burden in proving a fiduciary relationship. Rather, the loans at issue were simply arms-length transactions and there was no duty upon Community Bank to act as a member of Cooper and Bartlett's LLC.

With regard to the Mercedes loan, it is undisputed that Cooper borrowed the $31,770.00 for the Mercedes. It is also undisputed that he paid the majority of the loan off, leaving a principal balance of $6739.25 and that the entire loan was to be repaid on November 4, 2002. Coopers argument regarding whether the bank misrepresented the whereabouts of the title are wholly irrelevant to the fact that Cooper agreed to pay back the entire amount and has not done so.

Having considered all of the defendants' arguments, the court concludes that it is inescapable that the defendants are liable for the $235,000 loan entered into by them at closing on May 31, 2002 pursuant to terms as set forth in the loan documents. As provided by the terms of the promissory note, the defendants agreed "to pay all costs of collection, replevin or any other or similar type of coast if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law)." Furthermore, Cooper is individually liable for the principal balance remaining on the Mercedes loan.

With regard to the defendants' counterclaim, the court agrees that there is no material issue of material fact warranting a trial on that counterclaim. Said claim is based on the validity

of the alleged oral modification. Since the court has ruled that the oral modification was ineffective, summary judgment should be granted against the counterclaim.

Finally, the third party complaint against Mark Bartlett remains. However, since the bank's motion for summary judgment will be granted, the bank will no longer need to participate with regard to the Third Party Complaint. That is a matter between the defendants and Mark Bartlett.

### III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [67-1] should be granted. The defendants' claim against Bartlett contained in the Third Party Complaint remains. A partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) will issue forthwith with regard to Plaintiff Community Bank and Defendants Martin Cooper, Cooper Glass Company, LLC and C and R Holdings LLC,

**THIS DAY** of March 13, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE